# Third District Court of Appeal
## State of Florida

Opinion filed July 10, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0666
Lower Tribunal No. F14-14568
_____

**Johnny Simmons,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ramiro C. Areces, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Christina L. Dominguez, Assistant Attorney General, for appellee.

Before EMAS, GORDO and LOBREE, JJ.

PER CURIAM.

Johnny Simmons was arrested and charged in 2014 with burglary with a battery, strongarm robbery and misdemeanor battery. In 2015, he pled guilty to those charges and was sentenced on the felonies to three years in prison followed by five years' probation.

In November 2017, following his release from prison, he was arrested again and charged with burglary with an assault/battery and strongarm robbery. His probation officer filed an affidavit alleging that Simmons violated his probation by committing these new crimes. In 2019, Simmons admitted to violating his probation, and he was sentenced to five years in prison followed by five additional years of probation. Pursuant to the standard terms of his probation, Simmons was prohibited from changing residences without notifying his probation officer and obtaining his probation officer's consent.

In June 2021, following his release from prison, Simmons' probation officer filed a new affidavit, alleging Simmons violated his probation by absconding from probation, failing to obtain her consent before changing his residence, and making his whereabouts unknown. The affidavit was later amended to include allegations that Simmons had (on June 28, 2021) been arrested for three counts of attempted first-degree murder and one count of possession of a firearm by a convicted felon. He was also charged with

violating the condition of probation that prohibits a probationer from possessing a firearm or ammunition.

A probation violation hearing was held in March 2023, at which several witnesses testified, including Simmons' probation officer and the co-defendant charged with Simmons in the attempted first-degree murder. The State also called Simmons to testify at the hearing, over a blanket Fifth Amendment objection interposed by his attorney at the beginning of the examination. However, a review of the transcript reveals that Simmons was not questioned about the new substantive charges. Rather, he was questioned only about (1) his original 2014 probation case—identifying photographs taken of him during that 2014 arrest; and identifying his signature on the probation form at the time of his original plea; and (2) whether he absconded from his current supervision by moving from or changing his residence without notifying or obtaining his probation officer's consent, i.e., a non-substantive violation of the conditions of his probation.

The evidence introduced at the hearing regarding Simmons' involvement in the substantive violations (the three counts of attempted first-degree murder and possession of a firearm by a convicted felon) came from the testimony of the investigating detective as well as Simmons' codefendant (who had already entered a negotiated plea of guilty to the charges, had

3

been sentenced, and was testifying at Simmons' violation hearing as a part of her plea agreement). In addition, a video was played during the hearing, depicting Simmons getting into an altercation with one or more persons at an apartment complex, leaving and returning to that complex several minutes later with a firearm. In this video, Simmons climbs the stairs to the second floor, tries to open the front door of an apartment, discharges the firearm at the door, then breaks a front window of the apartment and fires several shots through the window and into the apartment.

Following the hearing, the trial court found the State had proven Simmons violated his probation by absconding from his probation and by committing the new offenses of attempted first-degree murder (three counts) and possession of a firearm by a convicted felon and by violating a condition of probation prohibiting possessing a firearm or ammunition. The trial court revoked Simmons' probation and sentenced him—on the original 2014 offenses—to life in prison for the crime of burglary with a battery, and a concurrent term of thirty years in prison (as a habitual felony offender) for the crime of strongarm robbery. This appeal followed.

Simmons raises two issues on appeal: (1) the trial court reversibly erred by "forcing" Simmons to testify against himself at the probation violation hearing; and (2) the written order does not conform to the oral

4

pronouncement of the court at the hearing: the court found him not guilty of the violation of failure to pay restitution at the hearing but included it as a violation on the written revocation order.

As to the first claim, we find no error. Contrasting some of the differences between the rights afforded an accused and those afforded a probationer in Clarington v. State, 314 So. 3d 495, 502 (Fla. 3d DCA 2020), we noted some important distinctions between a probationer and one accused (but not yet found guilty) of a crime:

> By the time a probationer is charged with a violation of probation, his criminal case has already been adjudicated and, whether by plea or trial, a finding of guilt has already been made and a probationary sentence has already been imposed. Further, while a probation violation can result from the commission of a new criminal offense, such is not required for the commencement of a probation violation proceeding. A probationer can be found to have violated his probation by failing to comply with mandatory conditions that do not rise to the level of a criminal offense. Indeed, when a defendant is found in violation of his probation, and his probation is revoked, he is thereafter sentenced for the original offense: an offense for which he was already found guilty and for which he was already provided the full panoply of due process rights attendant to that earlier criminal prosecution.

(Alteration in original).

Consistent with these distinctions, we held that a probationer "may assert only a qualified privilege against compulsory self[-]incrimination at the probation violation hearing." Id. at 503 (citing Watson v. State, 388 So. 2d 15 (Fla. 4th DCA 1980) (holding a probationer may not validly invoke a Fifth

Amendment privilege to refuse to answer questions at a probation violation hearing regarding non-criminal conduct alleged to constitute the violation of probation, and the trial court may infer a probationer's silence, or refusal to answer questions, as evidence of noncompliance with the terms of his probation)); see also State v. Heath, 343 So. 2d 13 (Fla. 1977).

While the privilege against self-incrimination protects an accused from being compelled to give testimony, a "probationer may not refuse to answer a question, just because the answer would disclose a probation violation. His or her agreement to accept the terms of probation effectively waives a Fifth Amendment privilege with regard to this information. That privilege is applicable to conduct and circumstances concerning a separate criminal offense." Perry v. State, 778 So. 2d 1072, 1073 (Fla. 5th DCA 2001); see also E.P. v. State, 901 So. 2d 193 (Fla. 4th DCA 2005).  We find no violation of these principles during the course of the probation violation hearing.  In addition, the transcript reveals the State agreed it would not use Simmons' testimony in its prosecution of the new crimes against Simmons.

Simmons' second claim is that the trial court's written order (finding Simmons violated his probation by failing to pay restitution) does not conform to the court's oral pronouncement (finding no violation proven on this allegation).  While the State concedes the point (and our review of the record

6

confirms it) we have recently held that where a defendant fails to contemporaneously object to the written revocation order or fails to file a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b), the order will not be reversed on appeal (absent fundamental error) but is subject to an appropriately filed postconviction motion. Frazier v. State, 49 Fla. L. Weekly D359 (Fla. 3d DCA Feb. 14, 2024); see also Thomas v. State, 763 So. 2d 316 (Fla. 2000).

We affirm the order revoking probation in all respects, but as to that portion of the order finding Simmons violated his probation by failing to pay restitution, we affirm without prejudice to the filing of an appropriate postconviction motion.